UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

CIVIL ACTION NO. 10-62-HRW-CJS

MICHAEL CAMPBELL                                                                        PLAINTIFF

v.                        REPORT AND RECOMMENDATION

SOUTHERN HEALTH PARTNERS, INC.                                              DEFENDANT

* * * * * * * * * * * * *

On June 25, 2010, Plaintiff Michael Campbell filed suit against Defendants Boyd County Kentucky, Joseph "Joe" Burchett, David Salisbury, Marvin Meredith, Carl Tolliver, William Stevens, and twenty-five John/Jane Does for alleged violations of 42 U.S.C. § 1983, the Americans with Disabilities Act, and the Rehabilitation Act of 1973.[1]  (R. 1).  On December 6, 2010, in a First Amended Complaint, Plaintiff added Defendant Southern Health Partners, Inc. as a party and asserted § 1983 and medical negligence claims against it.  (R. 13).

Now pending before the Court is Defendant Southern Health Partners' Motion for Summary Judgment.  (R. 93).  This Motion has been referred to the undersigned for preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (R. 104).[2]  Having received Plaintiff's Response (R. 98) and Defendant's Reply (R. 101), the Summary Judgment Motion is ripe for

---

[1]Plaintiff later on June 30, 2011, voluntarily dismissed his claims against all of these "Boyd Defendants" (see R. 13, at ¶ 1) except the twenty-five John/Jane Does, none of whom have ever been identified.  (R. 43).

[2]Also referred to the undersigned for consideration is Defendant Southern Health Partners' Motion to Exclude Thomas P. vonUnrug's Supplemental Opinions (R. 109) and its Motion to Strike Plaintiff's brief regarding the testimony of Jerry Stephens (R. 112), as well as Plaintiff's Motion for Sanctions (R. 115).  These motions are also addressed herein this Report and Recommendation.

review.³ For the reasons that follow, it is **recommended** that Defendant's dispositive motion be **granted,** because Plaintiff's remaining medical negligence claims are time barred.

**I.     FACTUAL BACKGROUND**

Plaintiff Michael Campbell (hereafter "Campbell" or Plaintiff) was incarcerated at the Boyd County Detention Center from July 2 to July 13, 2009, on DUI and drug trafficking charges. (R. 93-1, at 1). At the time of his incarceration, Defendant Southern Health Partners (hereinafter "SHP" or Defendant) provided medical services to inmates at the Boyd County Detention Center. (R. 13, at 20). Campbell had a history of Bipolar Disorder, for which he was prescribed medication. (R. 98, at 4; R. 13, at ¶¶ 34-36). During this July 2009 incarceration, Campbell was placed in a holding cell at the Boyd County Detention Center, and was not provided prescribed medication for his Bipolar Disorder. As a result of the denial of his prescribed medication, as well as his likely withdrawal from non-prescribed pain medication, Plaintiff alleges he became disoriented and lost control of his bodily functions. (R. 98, at 5).

Campbell's condition deteriorated; he alleges that he was left lying on his side on the concrete floor of his jail cell in the same position for several days in his own excrement and urine, unable to eat or drink. (R. 1, at 12). Plaintiff further alleges that staff at the Boyd County Detention Center observed him in his poor condition over the course of several days, and failed to adequately respond. (*Id.*). During Plaintiff's incarceration, his mother, Jerry Lynn Stephens, contacted the Boyd County Detention Center several times to inform those in custody of her son that he had several physical and mental issues for which he required medication. (*Id.* at 9-10).

---

³The parties were also given an opportunity to file supplements to their summary judgment filings (*see* R. 107) in light of additional discovery that was permitted subsequent to Defendant's filing of its dispositive motion.

On July 13, 2009, Plaintiff was taken to King's Daughters Hospital. (R. 93, at 2; R. 98, at 11). The Emergency Room nurse indicated that Campbell was dehydrated and covered in feces. (R. 93, at 2; R. 98, at 5). Upon admittance to the hospital, Plaintiff also had blisters on his chest, abdomen, and right hand. (R. 93, at 2). As a result of his mistreatment at the Boyd County Detention Center, Plaintiff alleges that he suffered rhabdomyleosis and permanent nerve damage. (R. 98, at 5). He spent approximately three weeks in the King's Daughters Hospital. (R. 93, at 2).

On June 25, 2010, Plaintiff brought an action under 42 U.S.C. § 1983 and the Americans with Disabilities Act against Boyd County, Kentucky, Joseph "Joe" Burchett, David Salisbury, Marvin Meredith, Carl Tolliver, William Stevens, and twenty-five John/Jane Does. (R. 1). On December 6, 2010, pursuant to an Agreed Order between the then-named parties (R. 12), Campbell filed an Amended Complaint in which, for the first time, he named SHP as a Defendant. (R. 13). On June 30, 2011, Plaintiff dismissed his claims against Defendants Joseph "Joe" Burchett, David Salisbury, Marvin Meredith, Carl Tolliver, William Stevens, and Boyd County, Kentucky. (R. 43). At the time he dismissed his claims against these Defendants, Campbell specifically reserved the right to prosecute the claims in the Amended Complaint against Defendant SHP. (*Id.*).[4]

On December 19, 2011, SHP filed the pending Motion for Summary Judgment (R. 93), arguing that Campbell's remaining claims are barred by the applicable statute of limitations or, in

---

[4]Shortly after dismissing these Defendants, counsel tendered to the Court a proposed Agreed Order voluntarily dismissing Plaintiff's § 1983 claim against SHP. (R. 49). On September 14, 2011, a similar proposed order was tendered to the Court; however, this proposed order also displayed the "have seen and agreed" of SHP's counsel, and the text of the proposed order contained the additional sentence, "By agreeing to this Order, Southern Health Partners, Inc. does not acknowledge the validity of any claims asserted against it by Plaintiff and specifically reserves any and all defenses to those claims." (*See* R. 58). Presiding District Judge Wilhoit signed this Order dismissing the § 1983 claims against SHP on September 15, 2011. (R. 59).

3

the alternative, that it is entitled to official qualified immunity from these claims under Kentucky law. Plaintiff disputes both of these arguments in his Response (R. 98).[5]

As noted, the parties have since also filed other motions that are currently pending. On April 19, 2012, SHP filed a Motion to Exclude Plaintiff's expert Dr. Thomas P. vonUnRug's supplemental opinions, arguing the doctor's physical examination of Plaintiff was untimely since it was not completed before the expert reporting deadline. (R. 109). Plaintiff filed a Response in opposition to this Motion, claiming that Dr. vonUnRug's opinions are not new, but are only confirmed by his examination findings. (R. 116). On April 26, 2012, SHP filed a Motion to Strike or, in the Alternative, to Allow the Filing of Rebuttal. (R. 112). In this Motion, SHP argues that Campbell misused the Court's grant of an opportunity for each party to file a supplement to their summary judgment filings based on any information learned from additional discovery related to Jerry Stephens's status as power of attorney for Plaintiff. (*Id.*). Plaintiff, in his Response to the Motion to Strike, explained that in his supplement he combined newly discovered information with information previously known, in order to provide the Court with a context to understand the new information as it relates to Defendant's statute of limitations defense. (R. 114).

On May 7, 2012, Campbell filed a Motion for Sanctions for intentional spoliation and destruction of material evidence based on the deletion of documents from the computer of SHP's former Vice President of Operations. (R. 115). In its Response (R. 120), SHP indicated that the documents deleted from the former Vice President's computer were not relevant to the instant litigation, or those that were relevant were previously provided to Campbell.

---

[5]Since Defendant SHP's Motion for Summary Judgment should be granted based on the one-year statute of limitations, it is unnecessary to address SHP's alternative argument that it is entitled to official qualified immunity.

## II. STANDARD OF REVIEW

Under the federal rules, summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Wilson v. Karnes*, No. 2:06-cv-392, 2009 WL 467566, at *2 (S.D. Ohio Feb. 24, 2009) (citing *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir. 1978)). In reviewing motions for summary judgment, the Court must view all facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). However, the nonmoving party must provide more than a "mere scintilla of evidence"; there must be sufficient evidence on which the jury could reasonably find for the nonmoving party. *Dominguez*, 555 F.3d at 549. Also, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).

## III. ANALYSIS

### 1. Plaintiff's Claims Are Barred by the Applicable Statute of Limitations

#### A. The "Discovery Rule" Did Not Operate to Change the Accrual Date in This Case

Campbell acknowledges that his only remaining claims against SHP are for medical negligence. (*See* R. 98, at 4). SHP argues that these claims are barred by the applicable statute of limitations, and therefore summary judgment must be granted. (R. 93).

5

The parties agree that the applicable statute of limitations for these remaining claims against SHP requires that "[a]n action for an injury to the person of the plaintiff . . . shall be commenced within one (1) year after the cause of action accrued." K.R.S. § 413.140(1)(a). In general, the statute requires that a plaintiff file suit within one year of the alleged injury. *See Caudill v. Arnett*, 481 S.W.2d 668, 669 (Ky. 1972). However, under Kentucky's "discovery rule," "a cause of action will not accrue until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, not only that he has been injured but also that his injury may have been caused by the defendant's conduct." *Louisville Trust Co. v. Johns-Manville Products Corp.*, 580 S.W.2d 497, 501 (Ky. 1979) (quoting *Raymond v. Eli Lilly & Co.*, 371 A.2d 170, 174 (N.H. 1977)). *See also Whalen v. Stryker Corp.*, 783 F. Supp.2d 977 (E.D. Ky. 2011); *Johnson v. Sandoz Pharm. Corp.*, 24 F. App'x 533, 536 (6th Cir. 2001).

In the instant case, Campbell does not argue that the action against SHP was filed within one year from the date on which his injury occurred, nor does he argue that the amended complaint "relates back." Rather, he argues that the action against SHP did not accrue until sometime later due to the operation of the "discovery rule." (R. 98). In support of this argument, Plaintiff claims that SHP concealed the fact it had a role in causing Plaintiff's injuries, and therefore the cause of action did not accrue until Plaintiff was made aware of SHP's alleged wrongdoing. (*Id.*). Plaintiff claims that he was not aware of SHP's potential liability until the depositions of several SHP nurses, specifically the deposition of Nurse Belinda Moore, which took place on October 6, 2010. (*Id.* at 13). Campbell characterizes Nurse Moore's deposition as the "defining moment" in the case that gave him notice that SHP should be named a defendant in the action. (*Id.*). Therefore, it seems that Plaintiff believes October 6, 2010, was the date he discovered that SHP may be liable and the action

6

against SHP accrued.[6] Therefore, Plaintiff argues, suit against SHP was brought well within one year of the date of accrual of the action by application of the "discovery rule." (*Id.* at 3).

In its Reply (R. 101), SHP disputes Campbell's argument and claims that the action against it accrued at the end of July 2009, the same time it accrued against the other Defendants that have since been dismissed. In support of its view, SHP argues that Plaintiff and his mother, who was serving as his power of attorney at the time, knew or suspected that Plaintiff was not receiving his medications while he was incarcerated. (*Id.* at 9). Further, SHP maintains that Plaintiff and his mother knew that providing medications was the duty of "medical" at the Boyd County Detention Center. (*Id.*). SHP also asserts that the Health Services Agreement, which detailed that SHP provided all medical care to inmates at the Boyd County Detention Center, was a matter of public record, which Plaintiff was charged with knowing. (*Id.*). SHP also references several Kentucky cases that explain that the "discovery rule" does not apply to causes of action where the injury to the plaintiff is apparent. (*Id.* at 7).

Defendant's points are valid and supported by the record. The conclusion it advances as flowing therefrom – that the discovery rule does not apply here – is consistent with Kentucky law.

---

[6]While Plaintiff indicates that the October 6, 2010, deposition of SHP Nurse Moore was the "defining moment" in the case, he also claims that the later depositions of the SHP nurses in general put him on "notice" that SHP should be named a Defendant in the case. (R. 98, at 13). Nowhere in his Response does Plaintiff indicate the exact date on which he believes the cause of action against SHP accrued. Given Plaintiff's "defining moment" characterization of Nurse Moore's deposition, it is assumed that Plaintiff considers this the date of accrual of the action against SHP. In Plaintiff's Supplement to his Response (R. 111), Plaintiff seems to modify his position by stating that he "could NOT have learned of SHP's involvement until the sworn testimony of Nurse Natalie Fields was taken." (R. 111, at 2). This deposition took place on October 26, 2010. (*Id.*). Despite these inconsistencies, it is not necessary to make a finding of precisely when Plaintiff believes the cause of action accrued, just that Plaintiff believes it accrued sometime in October 2010.

In the case of an apparent injury,[7] such as the injury in this case, Kentucky courts have not delayed accrual of an action to allow a plaintiff time to determine the party responsible for the wrongdoing. In *Simmons v. South Central Skyworkers, Inc.*, 936 F.2d 268, 269 (6th Cir. 1991), the Sixth Circuit reasoned that Kentucky's "discovery rule" is "not designed to assist those victims . . . who can readily ascertain the causal relationship, but cannot readily ascertain the identity of the alleged tortfeasor." The Sixth Circuit continued, "[i]ndeed, logic dictates that such an exception is capable of swallowing the rule." *Id.* Although Plaintiff claims that the "discovery rule" applies to this case, he has cited no Kentucky authority that applies the "discovery rule" to a case where the plaintiff's injury was apparent. Further, Plaintiff argues that while he knew he was injured due to insufficient medical care at the Boyd County Detention Center, he could not determine that SHP was responsible until the depositions of SHP nurses. (R. 98, at 22). Based on this characterization, it is clear that this case falls squarely into the category of cases the Sixth Circuit found the Kentucky "discovery rule" would not apply to – a case in which Plaintiff readily understood the causal relationship of his injury, but could not readily ascertain the identity of all the alleged tortfeasors. *See Simmons*, 936 F.2d at 269.

To the extent that Plaintiff argues that he did not and could not have identified SHP as a tortfeasor responsible for his injuries within the statutory time constraints, this argument is without

---

[7]Kentucky courts have generally limited the application of the "discovery rule" to causes of action for "latent" injuries, meaning injuries that are not known to the plaintiff until after the statute of limitations has already run. *See Louisville Trust Co. v. Johns-Manville*, 580 S.W.2d 497, 501 (Ky. 1979) (tolled "when his injury was of an inherently unknowable nature"); *Simmons v. South Central Skyworkers, Inc.*, 936 F.2d 268, 269 (6th Cir. 1991) (Sixth Circuit applying Kentucky law and finding that application of the "discovery rule" is limited to "cases where the plaintiff has not even known of his injury until after the statute had run"). In the instant case, Plaintiff's injury was known as it occurred, in July 2009. Plaintiff was hospitalized shortly after his time at Boyd County Detention Center. (R. 13).

8

merit. An individual who knows he has been injured, as Plaintiff in this case, has a duty to investigate and discover the identity of the tortfeasor within the statutory period. *Combs v. Albert Kahn Associates, Inc.*, 183 S.W.3d 190, 199 (Ky. Ct. App. 2006). In *Combs*, the plaintiffs sought protection from Kentucky's "discovery rule" when they failed to timely file a complaint against an architecture firm and construction company, who plaintiffs claimed they did not know were responsible for their injury until their depositions were taken in another, later case. *Id*. at 199. The Kentucky Court of Appeals, in rejecting the argument, found that plaintiffs had failed to offer any reason why they could not have discovered the two defendants' status as tortfeasors with reasonable diligence. *Id.* The court went on to explain that the discovery rule does not operate to extend the statute of limitations to discover the identity of the tortfeasor unless there is a fraudulent concealment or misrepresentation by the defendant regarding its role in causing a plaintiff's injury. *Id*. Here, Plaintiff knew that he was injured in July 2009 and, with reasonable diligence, should have discovered that SHP may have been a responsible tortfeasor within the statutory time constraints considering he attributed his injuries in part to the failure to be provided with his medications. Plaintiff also knew in July 2009 that distributing medications was the duty of "medical," a separate entity at Boyd County Detention Center. Further, and as discussed in Section C *infra*, no act of fraudulent concealment or affirmative misrepresentation by SHP has been shown here.

In light of the above, applying the "discovery rule" to the circumstances of this case would, as the Sixth Circuit noted in *Simmons,* swallow the rule. Therefore, the "discovery rule" does not operate to postpone the accrual of the action against SHP.

      **B.**     **Statutory Estoppel Based on Concealment Does Not Apply Because Defendant SHP is Not a Resident of the Commonwealth of Kentucky**

9

Plaintiff claims that SHP should not be allowed to claim statute of limitations as a defense because it concealed its wrongdoing. (R. 98, at 23-26). In support of this claim, Plaintiff cites K.R.S. § 413.190(2), which provides:

> [w]hen a cause of action mentioned in [K.R.S. § 413.140(1)(a)] accrues against *a resident of this state*, and he by . . . concealing himself or by any other indirect means obstructs the prosecution of the action, the time of the . . . obstruction shall not be computed as any part of the period within which the action shall be commenced.

(emphasis added). Plaintiff argues that since SHP concealed its own wrongdoing, the statute of limitations should be tolled in this case. (R. 98, at 23-26). However, the plain meaning of the statute indicates that this section only applies to accrual against a resident of the Commonwealth of Kentucky. Further, courts interpreting this statutory provision have concluded that this section only applies to Kentucky residents. *See Doe v. Suroor*, No. 3:05-CV-728-H, 2007 WL 1467143, at *1 (W.D. Ky. 2007) ("Since Defendant is not a resident of Kentucky, the tolling statute cannot apply to him."). *See also Rockwood v. Huey*, 348 S.W.2d 915 (Ky. 1961) (citing *O'Bannon's Adm'r v. O'Bannon*, 76 Ky. (13 Bush) 583 (Ky. 1878)). Here, it is undisputed that SHP is a foreign corporation, and consequently, not a resident of the Commonwealth of Kentucky. (*See* R. 13, ¶ 19; R. 101, at 12). Therefore, statutory estoppel under K.R.S. § 413.190(2) does not operate to toll the statute of limitations in this case because SHP is not a resident of the Commonwealth of Kentucky.

     **C.    SHP Should Not Be Equitably Estopped From Asserting a Statute of Limitations Defense**

In the course of arguing that the statute of limitations should be tolled by statutory estoppel, Campbell also seems to briefly argue that the equitable estoppel doctrine or fraudulent concealment should apply in this case. (*Id.* at 25-26). Plaintiff characterizes the equitable estoppel doctrine as a means to preclude "a defendant from asserting the statute of limitations where the defendant has

10

taken actions 'calculated to mislead or deceive and to induce inaction by the injured party.'" (*Id.* at 25). Although Campbell's discussion of the facts that allegedly give rise to his equitable estoppel argument is very brief, it will be assumed for purposes of Plaintiff's equitable estoppel/fraudulent concealment[8] argument that he would also look to those same facts that he cited as giving rise to his statutory estoppel claim.

SHP would be estopped from asserting statute of limitations if by fraudulent concealment it induced Campbell not to bring suit. *Hazel v. General Motors Corp.,* 863 F. Supp. 435, 439 (W.D. Ky. 1994) (citing *Burke v. Blair,* 349 S.W.2d 836, 838 (Ky. 1961)). SHP must have prevented Campbell from inquiring into the case, eluded his investigation, or otherwise misled him. *Id.* Moreover, wrongful concealment requires an affirmative act with respect to the operative fact; mere silence or passivity is not enough. *See Gailor v. Alsabi*, 990 S.W.2d 597, 603 (Ky. 1999).

Campbell's arguments in support of applying the equitable estoppel doctrine are largely limited to alleged wrongdoing within the course of discovery after SHP was already named as a defendant and other conclusory statements that SHP concealed information. (R. 98, at 2-26). Plaintiff also alleges that SHP nurses told a misleading "horror story" with respect to the mistreatment of prisoners by deputies and the jailer at the Boyd County Jail. (*Id.* at 6).

Discovery disputes that occurred after SHP was made a defendant in the instant action cannot be relied upon in determining whether the statute of limitations should be tolled as they are not

---

[8]Plaintiff uses the terms "equitable estoppel" and "fraudulent concealment" interchangeably, which is "a practice common among the courts." *Easterly v. Budd*, No. 06-00186, 2006 WL 2404143, at *1, *9 (N.D. Ohio Aug. 18, 2006). Therefore, these will be addressed as one argument. *See Bridgeport Music Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 891 (6th Cir. 2004) ("Equitable estoppel, sometimes referred to as fraudulent concealment, is invoked in cases where the defendant takes active steps to prevent the plaintiff from suing in time.").

relevant to whether SHP's conduct prevented Plaintiff from discovering that SHP should be made a defendant; SHP was already a party at the time of all discovery disputes and alleged wrongful withholding of documents. Plaintiff also makes general allegations of wrongdoing, such as that there were a lack of records for Plaintiff. However, Plaintiff has not indicated what records SHP was obligated to directly supply to Plaintiff before being made a party in the instant action.

Plaintiff also claims that SHP nurses told fabricated stories about how abusive the jailer and deputies at the Boyd County Jail were to inmates. Plaintiff claims that these stories misled him and kept him from determining that SHP should be made a party in this action. (R. 98, at 2-13). However, Plaintiff has not shown that the SHP nurses' stories were untrue. To the contrary, Plaintiff has submitted exhibits corroborating the fact that the condition at the Boyd County Jail was deplorable, including an e-mail from Nurse Belinda Madden to SHP, which e-mail indicated that the reason she was leaving her job at SHP was due to the inhumane treatment by the jailer and other deputies of prisoners at Boyd County Jail. (R. 115-6, at 1-2). Further, as Plaintiff notes, an investigation of the Boyd County Jail was conducted in July 2009, the same month that Plaintiff was a pretrial detainee there. The investigation revealed several violations, which indicated the poor state of the Boyd County Jail at that time. (R. 98-7). Therefore, Plaintiff has not shown that these allegedly misleading stories from SHP nurses were untrue.

Here, Plaintiff has failed to point to facts that would show that SHP somehow affirmatively misled him. And although Campbell argues these stories about the jail kept him from realizing SHP may also be responsible, there was sufficient information at that time to have raised questions for Plaintiff about whether SHP was somehow involved in bringing about his injuries. *See Hazel,* 863 F. Supp. at 439-40. These facts should have alerted Plaintiff to investigate and consider SHP as a

potential tortfeasor, such as Plaintiff's belief that his injuries were due in part to his lack of receiving his prescribed medication and his knowledge that "medical," a separate entity at the Detention Center, was responsible for providing medication to inmates.

At the time of Plaintiff's incarceration, Plaintiff's mother Jerry Lynn Stephens believed that Plaintiff was being denied his prescribed medication while an inmate at the Boyd County Jail. (*See* R. 101-3, excerpt of Stephens deposition). Ms. Stephens believed that withholding this medication from Plaintiff would have a harmful effect on him. (*Id.*). Ms. Stephens also indicated that she was informed when she called the Jail that medication distribution was the duty of "medical" at the Jail, and then was transferred to this separate department. (*Id.* at 58). Ms. Stephens also stated that she called medical about four times and left "more than one message." (*Id.* at 58, 60). Ms. Stephens claims that she was unsuccessful at reaching medical. (*Id.* at 58). Therefore, on July 23, 2009, the date on which Plaintiff executed a power of attorney in favor of his mother, as his agent Ms. Stephens had knowledge that there was a separate medical entity responsible for medication distribution, a belief that Plaintiff had not been provided his prescribed medication, and a well-founded inclination that Plaintiff not being provided that medication would have an adverse effect on his health. Plaintiff knew that a separate medical entity was in charge of administering medications, and Plaintiff knew at the time he filed his original Complaint that this entity was SHP. Plaintiff indicated in his original Complaint that he experienced damages as a result of not being provided his prescribed medication (*see* R. 1, at ¶¶ 1, 38, 68, 73), yet the original Complaint did not include SHP as a defendant. (*Id.*).

13

To invoke the equitable estoppel doctrine,[9] Plaintiff must show that he has diligently pursued his rights and exercised reasonable care to discover whether he had a viable legal claim. *See Hazel,* 863 F. Supp. at 339 (citing *Burke v. Blair,* 349 S.W.2d at 838). Here, Plaintiff cannot make such a showing. Campbell acknowledges that equitable estoppel requires he be reasonably diligent in pursuing his claims, but he maintains that he was being diligent because prior to the turning point depositions of Nurses Moore and Fields, there were no facts he could have relied upon or obtained to implicate SHP. (*See* R. 98, at 7, 26). However, Plaintiff was aware well within the statute of limitations period that SHP provided medical care to the Boyd County Jail inmates. (R. 93-3). In fact, this notice was provided to Plaintiff two months before he originally and timely filed suit against the other Defendants. (*Id.*; R. 1). Further, the fact that SHP provided medical services to the Boyd County Jail was memorialized in the Health Services Agreement, which is a matter of public record, which Plaintiff is charged with knowing. *See Lingar v. Harlan Fuel Co.*, 182 S.W.2d 657, 659 (Ky. 1944); *Gailor v. Alsabi*, 990 S.W.2d 597, 602 (Ky. 1999). Plaintiff did not consider this information and whether it pointed to SHP as a party against whom he had a potential claim, arguing that it was not until the deposition testimony that he became aware. But "[a]ny fact that should excite his suspicion is the same as actual knowledge of his entire claim[,]" *Hazel,* 863 F. Supp. at 440, and his failure to pursue these facts runs counter to his "affirmative duty to use diligence in

---

[9]At times throughout the Response with respect to his equitable estoppel argument, Plaintiff uses the term "tolling." The Court assumes that this is inadvertent since Plaintiff does not advance a separate equitable tolling argument. Further, any such possible argument for equitable tolling would be inappropriate in this case since equitable tolling applies only where there has been no allegation of impropriety on the defendant's part. *See Bridgeport Music, Inc. v. Boutit, Inc.*, 101 F. App'x 76, 81 n.4 (6th Cir. 2004) (citing *Hill v. United States Dep't of Labor*, 65 F.3d 1331, 1335 n.2 (6th Cir. 1995)). Here, Plaintiff alleges that SHP concealed information regarding its potential status as a tortfeasor and otherwise misled Plaintiff.

discovering his cause of action within the limitations period[,] *id.* (citing *Dayco Corp. v. Goodyear Tire & Rubber Co.,* 523 F.2d 389, 394 (6th Cir. 1975)).

In further support of Plaintiff's argument that SHP fraudulently concealed its wrongdoing, Plaintiff states that "SHP knew that its fraudulent concealment of the facts would eventually fail and they would be made a party. So, SHP had its attorneys attending depositions and actively defending them, even before they officially became a party." (R. 98, at 10). Yet, if Plaintiff had been exercising the due diligence required on his part in order to invoke the equitable estoppel doctrine, SHP's presence at depositions before it was made a party should have alerted Plaintiff to further investigate whether SHP should be named as a defendant. In this same vein, Plaintiff claims that from July 2009 until June 2010, the "nurses involved in Michael Campbell's care refused to speak with Plaintiff's counsel." (R. 111, at 3). This factual allegation, accepted as true, would also be evidence of Plaintiff's lack of due diligence. If SHP nurses refused to speak with Plaintiff's counsel for nearly a year, this also should have alerted Plaintiff that further investigation into SHP's role in Plaintiff's injuries might be warranted.

The instant case is similar in some respects to the case of *Aladimi v. Grant County Detention Ctr.*, No. 09-CV-168-WOB, 2010 WL 399107, at *1 (E.D. Ky. Jan. 27, 2010). In *Aladimi*, the Court *sua sponte* dismissed the plaintiff's case in its entirety on statute of limitations grounds. *Id.* Aladimi filed a *pro se* § 1983 action against the Grant County Detention Center and several unidentified "John Doe" employees of the Grant County Detention Center after the applicable statute of limitations had run. *Id.* Aladimi claimed that he attempted several times to ascertain the names of staff and elicit other information from the Grant County Detention Center, but that "all subsequent attempts unfortunately failed." *Id.* at 2. Aladimi also claimed that the Grant County Detention

15

Center received letters from him requesting information, but ignored his request, "and acted in bad faith to circumvent my plan to sue GCDC and made it difficult for me to obtain all necessary documents." *Id.* In dismissing the case, the court discussed the applicability of "equitable estoppel/fraudulent concealment." *Id.* at *6 (citing *Easterly v. Budd,* No. 06-00186, 2006 WL 2404143 (N.D. Ohio Aug. 18, 2006)). The court in *Aladimi* found that since the plaintiff knew the identity of the perpetrators, the employer of the perpetrators, and that he suffered an injury, the plaintiff had all the necessary facts to investigate and prosecute his potential causes of action. *Id.*

In this matter, Plaintiff, through his agent, knew in July 2009 that there was medical staff at Boyd County Detention Center; that said medical staff administered medication to the inmates; that the medical staff was employed by the Boyd County Detention Center to provide medical services and care to inmates (here, by contract); and that he had suffered injury. Therefore, Plaintiff "'had all of the facts necessary to investigate and prosecute his potential causes of action.'" *Id.* at *6 (quoting *Easterly v. Budd*, No. 06-00186, 2006 WL 2404143, at *1, *14 (N.D. Ohio Aug. 18, 2006)). Plaintiff is therefore not entitled to the application of equitable estoppel based on any affirmative act of SHP.

Finally, Plaintiff argues that although the equitable estoppel/fraudulent concealment doctrine usually requires an affirmative act on the part of the defendant, since SHP is a medical provider, it already had an affirmative duty to make disclosures to him and its silence in the face of such duty amounts to a fraudulent concealment sufficient to invoke the application of equitable estoppel. (R. 98, at 24-25). Specifically, Plaintiff argues, "the nurses providing care had a duty to not only care for him [Plaintiff], but to also disclose the events surrounding his care and treatment." (*Id.* at 25).

Plaintiff cites no authority imposing such a "duty to disclose" upon a nurse specifically and under these circumstances of providing medical care to prisoners generally. Instead, each case Plaintiff cites in which a duty to disclose is recognized in a medical relationship is within the context of a physician-patient relationship. There is no basis for finding a duty to disclose within the context of a nurse-patient relationship or these factual circumstances, and Plaintiff's failure to cite any authority that extends the duty of disclosure to a nurse illustrates that point.

Finally, even assuming, *arguendo*, that a nurse-patient relationship is a special relationship within which an affirmative duty to disclose is imposed, no SHP nurse in this case could be considered to have acted fraudulently by remaining silent. In *Adams v. Ison*, 249 S.W.2d 791, 793-94 (Ky. 1952), which Plaintiff cites in his Response, the Kentucky Supreme Court suggests that a physician has a duty to inform a patient about some wrongdoing that may give rise to a cause of action.[10] Here, the nurses and SHP continue to deny any wrongdoing or liability in this case. Plaintiff has not shown that SHP had an affirmative legal duty to disclose any information, nor has Plaintiff specified what information SHP was obligated to disclose to him prior to being formally named in a lawsuit. *See Hazel,* 863 F. Supp. at 339 (noting that since "fraudulent concealment requires concealment as well as fraud[,] . . . . [e]ven if Defendant did conceal evidence of the gas tank's design defect, that would not distinguish our case from almost every products liability action in which defendants know or possess potentially harmful information that is withheld until litigation compels disclosure.").

---

[10]Giving Plaintiff every benefit of the doubt, this case will be viewed as Plaintiff represents it. However, the doctor in *Adams* affirmatively misrepresented a situation, as opposed to merely remaining silent. *Adams v. Ison*, 249 S.W.2d 791, 794 (Ky. 1952) ("The doctor replied in effect, 'Don't file the suit for I assure you no harm will come from the tube. It will be dissolved by the bodily processes.' Here was a misrepresentation.").

For the reasons herein discussed, it will be recommended that Defendant's Motion for Summary Judgment be granted on grounds that Plaintiff's remaining claims are barred by the statute of limitations.

**2.     Plaintiff's Motion for Sanctions and SHP's Pending Motions**

As noted, Campbell has also filed a Motion for Sanctions for Intentional Spoliation and Destruction of Material Evidence. (R. 115). He claims that SHP destroyed some 12,000 e-mails and 160 documents from the computer of former Vice President of Operations, Lisa Watts. Plaintiff argues that the evidence destroyed was material to prove his claims against SHP and to rebut the claim that the Boyd County Jailer and deputies interfered with medical treatment of inmates at the jail. (*Id.* at 1). In said Motion, Plaintiff advances that the Court should redress the alleged destruction of material evidence by an adverse inference instruction to the jury and/or excluding any evidence suggesting that the Boyd County Detention Center interfered with SHP's ability to provide care at the jail. (*Id.* at 1). In its Response (R. 120), SHP denies that any of the destroyed information was relevant to the instant litigation, or, if it was, SHP contends that it provided that relevant information to Plaintiff already.

Since it is being recommended that Plaintiff's claims against SHP should be disposed of on statute of limitations grounds, Plaintiff's motion for sanctions should be denied as moot. The pending dispute concerning improper destruction of records on Ms. Watts's computer involves conduct following the initiation of suit. The claimed wrongfulness of that conduct is no longer at issue where Plaintiff has otherwise failed to timely institute his claims.

In addition, Defendant has moved to exclude the supplemental opinions of Plaintiff's expert, Thomas P. vonUnrug. This motion should also be denied as moot, since consideration of the

18

appropriateness of this supplementation is also no longer at issue given the recommended dismissal of Plaintiff's claims on timeliness grounds.  And finally, Defendant has moved to strike Plaintiff's Additional Information filing (R. 111) as beyond the scope of the Order permitting supplemental filings and instead being a disguised sur-reply to its dispositive motion.  SHP seeks in the alternative an opportunity to file a brief in rebuttal to Plaintiff's filing.  Because a summary judgment in Defendant's favor on timeliness grounds is being recommended, Defendant has not been unfairly prejudiced by Plaintiff's supplemental filing nor is a brief in rebuttal to this filing necessary; the request to strike should also be denied as moot.

**IV.     CONCLUSION AND RECOMMENDATION**

For the reasons stated herein, **IT IS RECOMMENDED** as follows:

(1)     Defendant's Motion for Summary Judgment (R. 98) be **granted;**

(2)     Defendant's Motion to Exclude Thomas P. vonUnrug's Supplemental Opinions (R. 109) be **denied as moot;**

(3)     Defendant's Motion to Strike or, in the Alternative, to Allow the Filing of Rebuttal (R. 112) be **denied as moot;**

(4)     Plaintiff's Motion for Sanctions, Including an Adverse Inference Instruction, and Such Other Sanctions This Court Deems Appropriate for Intentional Spoliation and Destruction of Material Evidence (R. 115) be **denied as moot;** and,

(5)     this action be **stricken** from the active docket of this Court.

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service or further appeal is waived.  Fed. R. Civ. P. 72(b)(2); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140, 155 (1985).  A general objection

that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991)). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *Howard*, 932 F.2d at 509. A party may respond to another's objections within 14 days of being served with those objections. Fed. R. Civ. P. 72(b)(2).

Dated this 15th day of August, 2012.



Signed By:
*Candace J. Smith*
United States Magistrate Judge

G:\DATA\opinions-other\10-62 Campbell R&R revised.wpd